UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Liberty Mutual Fire Insurance Company and
Liberty Insurance Corporation,

       Plaintiffs,

v.

James Holka, Individually and as Personal
Representative of the Estate of Malgorzata
Holka, Deceased,

       Defendants,

  and

Richard Stieler, David Little, and Kim Little,

       Interested Party Defendants.

_____/

Case No. 12-13200

Honorable Nancy G. Edmunds

**<u>Order Granting in Part Plaintiffs' Motions for Summary Judgment [35 & 36]</u>**

Currently before the Court are two motions for summary judgement. The Plaintiffs in this case, Liberty Mutual Fire Insurance Company ("LMF") and Liberty Insurance Corporation ("Liberty"), are seeking declaratory relief regarding insurance policies issued to Defendants Malgorzata Holka, deceased, and her widower James Holka.[1] Specifically, Plaintiffs are seeking a determination that the policies issued to the Holkas do not cover the accident which caused the death of Mrs. Holka and which is the basis of an ongoing lawsuit in Ohio.

---

[1] Mr. Holka is a party to this lawsuit both individually and in his capacity as the representative of the estate of Malgorzata Holka.

For the reasons stated below, the GRANTS IN PART Plaintiffs' motions and finds that with regard to the Liberty Homeowners Policy, there is no insurance coverage for the accident. The Court further finds that with regard to the LMF Auto Policy, there is no liability coverage for the Ohio accident. As to the LMF Auto Policy's no-fault PIP coverage, the Court DENIES LMF's motion for summary judgment.

**I.   Facts**

Liberty and LMF are related but independent insurance companies. Pls.' Sec. Amd. Compl. 3. Liberty issued a homeowners insurance policy and LMF issued an automobile insurance policy to Malgorzata Holka, deceased, and her widower James Holka. *Id.* at 4, 6.

Mr. Holka lives, and Mrs. Holka lived, in Michigan. *Id.* at 3. The Holka's Liberty and LMF insurance policies were issued in Michigan. *Id.* at 4, 6. While vacationing in Ohio, Mrs. Malgorzata was driving a rented moped on a public street. *Id.* at 9. Mrs. Malgorzata was involved in a head-on collision, wherein her moped crashed into a golf cart. *Id.* Mrs. Holka died as a result of the injuries suffered in the accident, and three of the four occupants of the golf cart were injured. *Id.* The accident is the subject of an ongoing lawsuit in Ohio. *Id.* at 10-11. LMF and Liberty are currently defending the Ohio action on Mr. Holka's behalf. *Id.*

LMF and Liberty initiated this action, seeking declaratory relief to clarify their obligations under the insurance policies issued to the Holkas with regard to the Ohio accident and the resultant lawsuit.

The Liberty homeowners policy at issue states, in relevant part:

<u>COVERAGE E - Personal Liability</u>

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury ." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

* * *

  2. To a person off the "insured location," if the "bodily injury":

* * *

    b. Is caused by the activities of an "insured"

SECTION II - EXCLUSIONS

  1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":

* * *

    F. Arising out of:
      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

\* \* \*

This exclusion does not apply to:
(1) A trailer not towed by or carried on a motorized land conveyance.
(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
(a) Not owned by an "insured"

Pls.' Sec. Amd. Compl., Ex.C, Liberty Homeowners Policy, 23-24.

The liability portion of the LMF Automobile Policy states in relevant part:

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking forthese damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

\* \* \*
EXCLUSIONS

\* \* \*

4

>   B. We do not provide Liability Coverage for the ownership, maintenance or use of:
>
>   1. Any vehicle which:
>
>   a. Has fewer than four wheels; or
>   b. Is designed mainly for use off public roads.
>
>   This exclusion (B.1.) does not apply:
>
>   a. While such vehicle is being used by an "insured" in a medical emergency; or
>
>   b. To any "trailer."
>
>    * * *
>
>   Automobile Amendatory Endorsement
>   I. DEFINITIONS
>
>   A. The definition of Your Covered Auto is replaced with the following:
>
>   "Your Covered Auto" means:
>   1. Any vehicle shown in the Declarations.
>   2. A newly acquired auto.
>   3. Any trailer you own.
>   4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
>
>   a. Breakdown;
>   b. Repair;
>   c. Servicing;
>   d. Loss; or
>   e. Destruction.
>
>   This provision (4.) does not apply to Coverage for Damage To Your Auto.

Pls.' Sec. Amd. Compl., Ex. B, LMF Auto Policy, Liability Section and Automobile Amendatory Endorsement.

   The PIP portion of the LMF policy states:

I. Definitions

\* \* \*

B . The following definitions are added:

1. "Auto" means a motor vehicle or trailer operated or designed for use on public roads. It does not include:

a. A Motorcycle or moped;
b. A farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan Vehicle Code; or
c. A vehicle operated by muscular power or with fewer than three wheels.

\* \* \*

2. "Auto accident" means a loss-involving the ownership, operation, maintenance, or use of an "auto" as an "auto" regardless of whether the accident also involves the ownership, operation, maintenance, or use of a motorcycle as a motorcycle.

C. "Insured" as used in this endorsement means:

1. You or any "family member" injured in an "auto accident";

\* \* \*

II. Personal Injury Protection Coverage
INSURING AGREEMENT

A. We will pay personal injury protection benefits to or for an "insured" who sustains "bodily injury". The "bodily injury" must:

1. Be caused by accident; and
2. Result from the ownership, maintenance or use of an "auto" as an "auto".

B. These benefits are subject to the provisions of the Michigan Insurance Code. Subject to the limits shown in the Schedule of Declarations, personal injury protection benefits consist of the following...

Pls.' Sec. Amd. Compl., Ex.C, LMF Auto Policy, PIP Section.

LMF and Liberty now seek summary judgment on their complaint for declaratory relief. Mr. Holka opposes LMF and Liberty's motions. Interested Party Defendants Richard Stieler, David Little, and Kim Little oppose Liberty's motion on choice of law grounds.

## II. Analysis

### A. The Standard on Motion for Summary Judgment

The Sixth Circuit recently reiterated the familiar standard for summary judgment, stating that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### B. The law of Michigan applies to the interpretation of both insurance policies

Interested Party Defendants oppose Liberty's motion on choice-of-law grounds, arguing that the law of Ohio should apply here. The Court disagrees.

In deciding choice-of-law issues, a federal court must apply the applicable rules of the state in which it sits. *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). Interested Party Defendants provide a thorough review of the evolution of choice-of-law doctrine in Michigan, however, that review focuses on the resolution of conflicts of tort law. In Michigan there is a clear distinction between the analysis a court must conduct when attempting to resolve a tort conflict as opposed to a contract conflict, and currently before the Court is a contract conflict. Specifically, Michigan courts employ the approach laid out in the Restatement (Second) of Conflicts §§ 187 and 188 when resolving a contract law conflict. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995).

The factors set forth in Section 188 of the Restatement (Second) of Conflicts are: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Furthermore, Section 188 states that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."

Here, Michigan is the place of contracting and negotiation. The place of performance has yet to be determined, as no payment has been made to any parties in the underlying lawsuit. Mr. Holka is, and Mrs. Holka was, a resident of Michigan. As to the subject matter of the contract, the comments to § 188 of the Restatement states that where the location of the subject matter of the contract is a risk, "[t]he state where...the risk is located will have a natural interest in transactions affecting it." Restatement (Second) of Conflict of Laws §

188, Comment on Subsection 2 (1971). Here, the insured home, and therefore the location of the lion's share of the risk, is in Michigan.

It is true that the accident at issue occurred in Ohio, and that there is an ongoing lawsuit in Ohio. However, the Michigan Court of Appeals, when faced with a similar situation, found the laws of Michigan applicable. *Farm Bureau Ins. Co. v. Abalos*, 742 N.W.2d 624, 626-27 (Mich. App. 2007). Additionally, of the nine named parties to the Ohio lawsuit, only two of them are Ohio parties.

On the facts before the Court, it appears that Michigan has the most significant interest in the Liberty Homeowners Policy. Additionally, as there is no challenge to the application of Michigan law to the LMF Auto Policy, the Court will apply Michigan law to the Auto Policy as well.

### C. The interpretation of insurance contracts

The Sixth Circuit has noted that:

> [u]nder Michigan law, the proper interpretation of an insurance policy and determination of whether the policy language is ambiguous are questions of law to be determined de novo by the court. Further, in Michigan, an insurance policy is construed in accordance with well-settled principles of contract construction, but remain subject to statutory regulations.

*Ann Arbor Pub. Sch. v. Diamond State Ins. Co.*, 236 F. App'x 163, 165-66 (6th Cir. 2007)(internal citations and quotations omitted).

In the case at bar, the relevant statutory provision is found at Mich. Comp. Law § 500.3101, and it applies to that portion of LMF's motion seeking declaratory relief with regard to the insurance policy's "Personal Injury Protection" ("PIP") section. The Court will address the PIP issue in due course.

Additionally, insurance policies pose a unique challenge for courts, in part because the terms are often not negotiated in the way a contract between two commercial entities would be. Therefore, a court must "construe the contract in favor of the insured if an ambiguity is found," however, "this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999) (internal quotations and citations omitted). Furthermore, "[t]he fact that a policy does not define a relevant term does not render the policy ambiguous. Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings." *Id.* The *Henderson* court also stated that when interpreting plain English phrases in an insurance contract, "any attempt to define each element, or word, of the phrase...will almost invariably result in an inaccurate understanding of the phrase. Rather, the proper approach is to read the phrase as a whole, giving the phrase its commonly used meaning." *Id.*, 596 N.W.2d at 195.

### D. Duty to Defend

An insurance company has a duty to defend those it insures "in instances in which coverage is even arguable, though the claim may be groundless or frivolous." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, 05-2479, 2007 WL 2733336 (6th Cir. Sept. 19, 2007) (quoting *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich.1996)). Furthermore, "[t]he insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." *Id.* "If there is doubt regarding whether the insurer has the duty to defend, the doubt must be resolved in favor of the

policy holder." *Id.* (quoting *North Bank v. Cincinnati Ins. Cos.*, 125 F.3d 983, 986 (6th Cir.1997))

### E. There is no coverage for the Ohio accident under the Liberty Homeowners Policy

As noted above, the interpretation of an insurance policy and whether or not an insurance policy is ambiguous are matters of law to be decided by the court. *Ann Arbor Pub. Sch.*, 236 F. App'x 163, 165-66.

The Court has reviewed the Liberty Homeowners Policy and finds it to be unambiguous. Defendants contend that the term "motor vehicle" as used in the Homeowners Policy is ambiguous because "motor vehicle" is defined differently in four different places, namely: 1. the LMF Auto Policy; 2. the Michigan Vehicle Code; 3. the Michigan No-Fault Act; and 4. the Michigan Supreme Court case of *Farm Bureau Mut. Ins. Co. of Mich. v. Stark*, 468 N.W.2d 498 (Mich. 1991). Furthermore, Defendants argue that the undefined term "motorized land conveyance" is also ambiguous, presumably because of its relative obscurity.

It is true that "a contract or a contractual term is ambiguous if it is reasonably susceptible to more than one meaning." *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortgage Capital, Inc.,* 274 F.3d 1085, 1095 (6th Cir. 2001). The Court finds the operative portion of the quoted standard to be the word "reasonably." As such, when reading the Homeowners Policy, which does not define the terms "motor vehicle" or "motorized land conveyance," it appears to the Court that the language is intended to effect the broadest possible exclusion. Liberty could have left the exclusion clause at "motor vehicles," however, it chose to add the term "or all other motorized land conveyances." If

it is not clear enough that the intent is to exclude every imaginable form of land transportation that has a motor on it, a look at the next two words, "including trailers" is extremely informative. Trailers generally do not have motors independent of the motor on the vehicle to which that trailer is hitched. However, trailers are also excluded from the Homeowners Policy. To the Court, this evidences a clear intent to exclude from the policy as many land vehicles as possible, which makes sense considering that the policy is a homeowners policy and not an auto policy, which would be more likely to include coverage for vehicle accidents, and which is sold as a separate product.

Furthermore, the mere fact that "motor vehicle" is defined differently in the LMF Auto Policy has no bearing on its use in the Liberty Homeowners Policy. Parties to a contract are free to define words in a contract for the purposes of the contract. Just because a party has defined a commonly understood phrase narrowly for the purposes of a contract, does not then make that phrase "ambiguous" globally. To conclude otherwise would render every contract every written permanently ambiguous.

While a moped might not be a "motor vehicle" in common parlance, it certainly qualifies as a "motorized land conveyance." That is, a moped, indeed, the moped in this case, has a motor, travels on land, and conveys people from place to place.

The Liberty Homeowners Policy has an exclusion to the motor vehicle exclusion, which allows insurance coverage for accidents involving the insured's use of a "motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration." The moped at issue was registered under the Ohio motor vehicle registration laws. Whether or not the moped is subject to mandatory registration is not relevant to the

analysis, as the policy does not say subject to "mandatory registration," it only says "subject to motor vehicle registration," which the moped at issue was.

The Court finds, therefore, that the moped was a "motorized land conveyance" which was subject to motor vehicle registration and is excluded from coverage under the Liberty Homeowners Policy. Therefore, the Court GRANTS Liberty's motion for summary judgment and finds that the Homeowners Policy does not provide coverage for liability arising out of the Ohio moped accident, and Liberty has no duty to defend the Ohio lawsuit.

### F. The LMF Auto Policy does not provide liability coverage for the Ohio Accident

LMF argues that the Auto Policy does not cover the Ohio accident because of the definition of "auto" in the policy, and the policy's so-called "four-wheel exception." Defendants counter with two arguments. First, Defendants argue that they are seeking coverage for injuries not from the use of a moped, but from the explosion of a defective product, namely, the moped's gas tank. Setting aside for the moment that the LMF Auto Policy only covers liability arising from "auto accident[s]" and not defective products, Defendants' argument is not grounded in reality. Even if the Court were to accept that the injuries "arose out of an explosion of a defective product," that product is an integral part of a moped. In fact, Defendants' own argument contains evidence of this logical inconsistency: after claiming that the injuries in question did not occur because of Mrs. Holka's "use of the moped," Defendant immediately suggests that "[h]ad the moped in question not been defective" the injuries would not exist." Defendant choice of words suggests an understanding that while issues with the gas tank may have exacerbated the situation, the Ohio accident arose out of Mrs. Holka's use of a moped.

Regardless, as mentioned above, and pointed out by LMF, the Auto Policy only provides coverage for liability arising out of an "auto accident" and if Defendants are arguing that the liability at issue does not arise out of an auto accident but from a defective product, they are all but admitting that there is no coverage.

Second, Defendants argue that the four-wheel exception does not apply because the golf cart has four wheels and the Auto Policy does not specify that the liability exclusion is based on the vehicle driven by its insured. The Court has reviewed the Auto Policy and it agrees that the policy does not have obvious language that limits the exclusions to the vehicle driven by the insured. This conclusion, however, would appear to have the opposite effect from that sought by Defendants. That is, instead of broadening the category of accidents covered by the policy, this reading narrows the category of accidents covered by the policy. For instance, under this reading of the contract there would be no liability coverage if an insured was liable for an accident involving a car and a motorcycle, where the insured was driving the car. This unexpected outcome is due to the accident arising out of the use of a vehicle with less than four wheels, namely the motorcycle not driven by the insured; under this reading, the fact that the insured was driving the car, as opposed to the motorcycle, would not pull the accident out of the four-wheel exception because the exception would apply to all accidents involving the use - by anyone involved - of a vehicle with less than four wheels. The Court is not convinced that this is a compelling reading of the Auto Policy.

Regardless of the conclusion reached by the Court on Defendants' second argument, the second prong of the four-wheel exception operates to preclude coverage in

14

this case. Specifically, the second prong of the exception includes a provision excluding coverage for vehicles "designed mainly for use off public roads."

The term "designed mainly for use off public road" appears to the Court to be a "plain English phrase," and as such, the Court will interpret it accordingly. Golf carts, being mainly designed for use by golfers on a golf course, would appear to be "designed mainly for use off public roads" as golf courses are commonly understood to not be public roads. The Ohio accident, then, was between a "vehicle with less than four wheels" - the moped - and a vehicle "designed mainly for use off public roads" - the golf cart. Therefore, regardless of who was driving which vehicle, both vehicles involved in this accident fall into excluded categories.

Therefore, for the reasons stated above, the Court GRANTS IN PART LMF's motion for summary judgment and finds that the LMF Auto Policy does not provide liability coverage for the Ohio accident specifically with regard to the liability section of the Auto Policy and LMF has no duty to defend claims relating to that section of the Auto Policy arising out of the Ohio accident.

### G. The LMF Auto Policy likely provides personal injury protection benefits for the Ohio Accident

LMF argues that Defendants claims for PIP coverage should be denied. Here, the Court looks to both the Michigan No-Fault Act, Mich. Comp. Law § 500.3101, and the PIP section of the Auto Policy. LMF's argument hinges on a determination that the golf cart is not a motor vehicle under the terms of the PIP section of the Auto Policy. The Court is not convinced that the PIP section's definition conclusively excludes golf carts. .

In particular, LMF's reliance on *Overall v. Howard*, 738 N.W.2d 760 (Mich. 2007) is misplaced. In *Overall* the Michigan Supreme Court reversed the Court of Appeals' decision for the reasons stated in the dissent to the Court of Appeals' decision. That dissent reasons that a golf cart is not a "motor vehicle," but it does so in the context of the Michigan governmental immunity statute, relying on the reasoning in *Stanton v. Battle Creek,* 647 N.W.2d 508 (Mich. 2002). In turn, *Stanton* found a forklift to not be a "motor vehicle" and therefore outside the scope of the narrowly construed motor vehicle exception to governmental immunity. *Id.* at 510-12.

The most problematic aspect of the line of cases that LMF relies on here is the language in *Stanton* explaining why it chose a the narrower of two potential dictionary definitions of "motor vehicle." Specifically, the *Stanton* court noted that:

> [g]iven these divergent definitions, we must choose one that most closely effectuates the Legislature's intent. Fortunately, our jurisprudence under the governmental tort liability act provides an answer regarding which definition should be selected. As previously noted, it is a basic principle of our state's jurisprudence that the immunity conferred upon governmental agencies and subdivisions is to be construed broadly and that the statutory exceptions are to be narrowly construed. Thus, this Court must apply a narrow definition to the undefined term "motor vehicle."

*Id.* (internal citations omitted). In this case, the Court is not burdened by the constraints of a governmental immunity analysis. In fact, the Michigan Court of Appeals has stated that "[g]iven the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries." *Frierson v. W. Am. Ins. Co.*, 683 N.W.2d 695, 697 (Mich. App. 2004). In light of the state court's guidance that the provisions of the No-Fault Act be construed broadly, the *Stanton* court's necessarily narrow definition of "motor vehicle" is not relevant to the Court's analysis.

16

In order to ascertain the meaning of "motor vehicle" in the LMF PIP Policy, the Court must look to the No-Fault Act. The Act defines "motor vehicle" as:

> a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped, as defined in section 32b of the Michigan vehicle code, 1949 PA 300, MCL 257.32b. Motor vehicle does not include a farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan vehicle code pursuant to section 216 of the Michigan vehicle code, 1949 PA 300, MCL 257.216. Motor vehicle does not include an ORV.

Mich. Comp. Laws § 500.3101(e) (West).

As noted above, the PIP Policy definition[2] states:

> 'Auto' means a motor vehicle or trailer operated or designed for use on public roads. It does not include:
>
> a. A Motorcycle or moped;
> b. A farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan Vehicle Code; or
> c. A vehicle operated by muscular power or with fewer than three wheels.

It is notable that the Policy definition does not include the available statutory exclusion for off-road vehicles ('ORVs"). The Court finds the decision by LMF to leave out the ORV language indicative of an intent to provide broader coverage than the statutorily required minimum.

As the golf cart in this case does not fall into the enumerated exceptions in the PIP policy, and because it was "operated...on [a] public road[]," the Court finds that the Ohio

---

[2]The Court notes that the PIP policy employs the word "Auto" and defines it in terms of the words "motor vehicle" where the No Fault Act uses the words "motor vehicle" and defines them in terms of the word "vehicle." This is a distinction without difference, as the Policy must be construed in accordance with the Act.

accident may indeed qualify for coverage under the PIP Section of the LMF Auto Policy. Therefore, the COURT DENIES IN PART LMF's motion for summary judgement as it relates to the Defendants' claims for PIP benefits.

### III.    Conclusion

For the reasons stated above, the Court GRANTS Liberty's motion for summary judgement and declares that no coverage is available for the Ohio accident under the Liberty Homeowners Policy, and therefore no duty to defend claims arising out of that accident. The Court also GRANTS IN PART Liberty Mutual Fire's motion for summary judgment as it relates to the liability section of the Auto Policy and declares that the Auto Policy does not provide liability coverage for the Ohio accident, and therefore there is no duty to defend liability claims arising out of that accident. Finally, the Court DENIES IN PART Liberty Mutual Fire's motion for summary judgement as it relates to the Defendants' claims for Personal Injury Protection coverage under the Auto Policy.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 30, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 30, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol A. Hemeyer